IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**EVERY RICHARDSON**                                                                              **PLAINTIFF**
**ADC #139311**

v.                                       No. 4:24-cv-00937-LPR-PSH

**WARD, et al.**                                                                              **DEFENDANTS**

## ORDER

The Court has received the Partial Recommended Disposition (PRD) submitted by United States Magistrate Judge Patricia S. Harris (Doc. 19). No objections have been filed, and the time for doing so has expired. Nonetheless, after a *de novo* review of the PRD, along with careful consideration of the entire case record, the Court has concerns with some portions of the PRD. Other portions of the PRD, however, are perfectly fine and will be adopted. The Court explains further below.

1. The Court approves and adopts as this Court's findings and conclusions the PRD's analysis of the official capacity claims. All official capacity claims will be dismissed without prejudice.

2. The PRD treated Plaintiffs' individual capacity claims in bulk.[1] That's likely because the Motion to Dismiss did the same.[2] But, whatever the reason, the Court believes it wise at this juncture to make clear that the Complaint's allegations do not state a viable Procedural Due Process, Substantive Due Process, or Cruel and Unusual Punishment violation against any

---

[1] The Complaint asserts violations of Plaintiff's "Freedom of Religion rights, Equal Protection [r]ights, Due Process [r]ights," and his right to be free from "[c]ruel and [u]nusual [p]unishment . . . ." Compl. (Doc. 2) at 7. The Complaint references the "1st, 8th, and 14th Amendment[s] . . . ." *Id*. The Screening Order did not screen out any claims or portions of claims. *See generally* Doc. 8.

[2] *See generally* Mot. to Dismiss (Doc. 14); Br. in Supp. of Mot. to Dismiss (Doc. 15). The Motion to Dismiss was filed on behalf of Deputy Director Reed, Warden Gibson, and Lieutenant Sifuentes. Kishone Ward has not filed an Answer or a Response. *See* Doc. 14 at 1 n.1; *see also* Doc. 18.

Defendant.³  To the extent there could possibly be a § 1983-actionable violation here, it concerns potential infringement on Plaintiff's constitutional/statutory rights to exercise his religion.

3. The Court disagrees with the PRD's conclusion that Plaintiff has sufficiently stated a claim against Lieutenant Sifuentes.  According to the allegations in the Complaint, Lieutenant Sifuentes received Plaintiff's informal grievance about the Ramadan trays, investigated the incident, concluded Plaintiff was correct, told the chaplain so, and sent an e-mail to the chaplain requesting that Plaintiff be placed back on the Ramadan tray list.⁴  It is true—at least for purposes of this stage of the litigation—that Plaintiff continued to be deprived of Ramadan trays even after Lieutenant Sifuentes tried to help him.  But Plaintiff has not alleged that Lieutenant Sifuentes knew of the continued deprivation.  In sum, Plaintiff has not plausibly alleged that Lieutenant Sifuentes was either directly responsible for or showed deliberate indifference towards Plaintiff's removal from the Ramadan tray list.⁵  And, therefore, any individual capacity claim Plaintiff is trying to bring against Lieutenant Sifuentes must be dismissed (without prejudice).

4. The Court disagrees with the PRD's conclusion that Plaintiff has sufficiently stated a claim against Deputy Director Reed.  According to the Complaint, the first time that Reed learned of

---

³ The Complaint's allegations come nowhere in the vicinity of a Procedural Due Process or Substantive Due Process violation.  As for the Cruel and Unusual Punishment Clause, the allegations here aren't enough.  First, there is no allegation that Plaintiff was not offered the regular three meals a day.  Second, there is no allegation concerning the size and nutritional value of the single meal that Plaintiff did actually eat.  Third, there is no allegation the Plaintiff was suffering or risked suffering bodily harm from being deprived of the Ramadan meal.  Without such allegations—or allegations of a similar nature—there's nothing to plausibly suggest a Cruel and Unusual Punishment violation. Certainly, there's nothing that would plausibly suggest the violation of an aspect of this right that was, at the time of the incident, clearly established at a sufficient level of specificity.  *See Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) ("We do not 'define clearly established law at a high level of generality. . . . Rather, we look for a controlling case or a robust consensus of cases of persuasive authority.  There need not be a prior case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" (internal quotation marks omitted) (quoting *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020))).

⁴ *See* Compl. (Doc. 2) at 4–6.

⁵ *See, e.g.*, *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) (explaining that the deliberate indifference standard is not satisfied by mere negligence or inadvertence and "requires a highly culpable state of mind approaching actual intent").

Plaintiff being taken off the Ramadan tray list was when Plaintiff appealed Grievance VSM23-00502 to Reed.[6] The appeal, which is attached to the Complaint, shows that (1) Plaintiff did not write the appeal until May 1, 2023, and (2) the appeal was not submitted (or at least not "received") until May 10, 2023.[7] This is important because, by that time, Plaintiff was back on the Ramadan tray list and receiving Ramadan trays.[8] That means Reed was not made aware of the Plaintiff's removal from the tray list until after the Plaintiff was back on the tray list. Accordingly, there's nothing to plausibly suggest Reed was directly involved in the relevant deprivation of rights or was deliberately indifferent to the deprivation.[9]

5. Things are a bit different when it comes to Warden Gibson. According to the Complaint, and taking all reasonable inferences in favor of Plaintiff, Warden Gibson was first apprised of Plaintiff's removal from the Ramadan tray list on or around April 4, 2023. That was when Plaintiff first appealed Grievance VSM23-00502 to Gibson.[10] At that time, Plaintiff was still not back on the Ramadan tray list, and he would not be placed back on it for 16 more days. So, an inaction claim against Gibson is at least theoretically possible.[11] But the Court has a separate concern:

---

[6] Compl. (Doc. 2) at 5.

[7] *Id*. at 10–12.

[8] *Id*. at 7 (noting Plaintiff was back on the Ramadan tray list by April 20, 2023).

[9] Any claim based on Plaintiff receiving his Ramadan tray three-hours late one time in 2024 is similarly deficient. Reed did not know about the incident until after it happened. And there is no allegation that the late-tray problem happened again. Even assuming a late Ramadan tray could be the basis of a religious-liberties claim, Reed did not make the tray late and did not know about the tray being late until the situation was over.

[10] Compl. (Doc. 2) at 5.

[11] This is true only with respect to 2023. As to 2024, Gibson is in the same boat as Reed. *See supra* at note 9. Plaintiff has no viable claim against Gibson with respect to his 2024 late-tray issue.

qualified immunity. In the Motion to Dismiss, the three moving Defendants raised a prong-two qualified immunity argument.[12] The PRD did not address this argument at all.[13] The Court must.

According to the Complaint, Warden Gibson's offending conduct is that he didn't do an investigation into Plaintiff's grievances, that he "took Corporal Ward's statement" at face value, and that he "failed to act on the information" in Plaintiff's grievances.[14] But putting aside the conclusory allegation that Warden Gibson didn't investigate Plaintiff's claims, the actual facts alleged plausibly suggest at most that Warden Gibson's investigation was not thorough enough and (from Plaintiff's perspective) did not reach the right result. Plaintiff has no way of knowing—aside from speculation based on the grievance denial—whether Warden Gibson did no investigation, some investigation, or an exhaustive investigation.[15] Indeed, the Complaint itself acknowledges that Warden Gibson did some investigation: He either spoke to Corporal Ward or reviewed a statement she provided. And as to reaching the wrong result, the Complaint does not allege that Gibson actually believed Plaintiff but nefariously pretended otherwise. Instead, the Complaint just alleges that Gibson was wrong to believe Corporal Ward's statement over the conclusions of other corrections officers.

The Court is not independently aware of any Supreme Court authority, Eighth Circuit authority, or consensus of cases from other circuits that clearly established at the time of the incident that Warden Gibson's alleged conduct (or conduct sufficiently similar to it) constituted deliberate indifference. And Plaintiff has not pointed to any such authority—because Plaintiff did

---

[12] *See* Doc. 15 at 7 (asserting that, for liability to attach on an individual capacity claim under § 1983, it must have been clearly established at the time of the incident that the alleged offending conduct violated Plaintiff's rights).

[13] *See generally* Doc. 19.

[14] Compl. (Doc. 2) at 2; *see also id*. at 10, 14, 17.

[15] Plaintiff's vague and conclusory allegation regarding the lack of an investigation is based on nothing other than Plaintiff's speculation that any investigation would have inexorably led Gibson to a different conclusion.

not respond at all to the Motion to Dismiss.[16]

Accordingly, the Motion to Dismiss by Reed, Gibson, and Sifuentes (Doc. 14) is GRANTED in its entirety. All claims against those three Defendants are dismissed without prejudice.

IT IS SO ORDERED this 3rd day of September 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[16] If such authority exists, and if Plaintiff can point the Court to it, the Court would be willing to entertain a Motion for Reconsideration—so long as the Motion is filed within 45 days of the date of this Order. And, of course, if facts come out in discovery on the claims against Ward that make claims against Reed, Gibson, or Sifuentes viable, Plaintiff may seek to amend his Complaint so long as he does so in a timely fashion.